UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

DANIEL SHEPHERD,

    Plaintiff

Case No: _____

vs

Honorable _____

WK KELLOG CO,
and KELLANOVA

    Jointly and Severally,
    Defendants

_____/

## COMPLAINT
## AND REQUEST FOR JURY

### DESCRIPTION OF THE CASE

Plaintiff Daniel Shepherd asserts FMLA claims for interference and retaliation against WK Kellogg Co and Kellanova (formerly known as Kellogg Company, a predecessor in interest to WK Kellogg Co).

### PARTIES

1. Plaintiff, Daniel Shepherd ("Shepherd") is a resident of the state of Michigan and resides in the Western District of Michigan.

2. Defendant WK Kellogg Co is a Delaware corporation, qualified to do business in the State of Michigan, headquartered in Battle Creek, in the Western District of Michigan.

3. Defendant Kellanova ("Old Kellog") is a Delaware corporation, qualified to do business in the State of Michigan, headquartered in Battle Creek, in the Western District of Michigan. Kellanova was formerly named Kellogg Company.

## VENUE AND JURISDICTION

4. Venue is proper because the events and FMLA violations alleged in this Complaint occurred in the Western District of Michigan, Plaintiff resides in the Western District of Michigan, and the Defendants are each headquartered in the Western District of Michigan.

5. This Court has federal subject matter jurisdiction because the claims involve federal statutory questions, 28 U.S.C. §1331.

## GENERAL ALLEGATIONS

6. Shepherd was employed by Old Kellogg (now Kellanova) on or about May 5, 2015, at its Battle Creek production facility.

7. He remained an employee of Old Kellogg until approximately October 2023, at which time Old Kellogg spun off its North American cereal business to a new entity, WK Kellogg Co, and changed its name to Kellanova.

8. As a result of the corporate restructuring described above, Shepherd became an employee of WK Kellogg Co.

9. He remains employed by WK Kellog Co. at its Battle Creek facility as a machine operator.

10. The FMLA violations alleged in this Complaint occurred both while Sheperd was employed by Old Kellogg and by the new entity, WK Kellogg Co.

11. The alleged FMLA violations are ongoing.

## FMLA STATUS

12. At all times since at least July 1, 2021, Old Kellogg was and is an employer covered by the FMLA pursuant to 29 U.S.C. §2601 *et seq*. because it was and is a private business that employed fifty or more employees for each working day for at least twenty workweeks in the year prior to Shepherd taking FMLA leave.

13. At all times since employing Shepherd, WK Kellogg Co was and is an employer covered by the FMLA pursuant to 29 U.S.C. §2601 *et seq*. because it was and is a private business that employed fifty or more employees for each working day for since its inception.

14. Shepherd is an FMLA-eligible employee because he was employed by Defendants, collectively, for more than one year prior to requesting FMLA leave and had been employed by the Defendants, separately or collectively, for at least 1,250 hours in the twelve-month period prior to his request.

15. Shepherd has long suffered from a serious medical condition, migraines. After working for Old Kellogg for a year and becoming eligible for FMLA leave, he requested and was granted intermittent FMLA leave by Old Kellogg.

16. WK Kellogg continued Shepherd's grant of intermittent FMLA after its formation in 2023 and employment of Shepherd.

17. Shepherd has provided periodic medical certification of his medical condition to confirm his FMLA eligibility whenever requested by either of the Defendants.

18. Shepherd remains eligible for intermittent FMLA leave.

19. Defendant WK Kellogg Co. has provided continuous FMLA leave to Shepherd since employing him.

## EXTRA SHIFT/EXTRA DAY POLICIES

20. Old Kellogg, from at least July 2021, offered employees at the Battle Creek production facility voluntary additional hours on weekends that pay time-and-

a-half wages for Saturdays and double time on Sundays. Such overtime is referred to as Extra Shift/Extra Day in company materials ("ESED").

21. Old Kellogg administered ESED in the manner alleged in this Complaint.

22. Following the spin-off of the North American cereal business, WK Kellogg Co administered, and continues to administer, ESED in the manner described in this Complaint.

23. Employees who desire to work ESED hours, when such hours are offered in their department, must sign up to work the available days/shifts for which they are interested.

24. ESED availability is typically posted on Thursday for ESED hours available the coming weekend.

25. If more employees express interest in working a given shift/day than the employer needs, the ESED hours are assigned within job classifications by seniority.

26. Old Kellogg adopted a policy which states: "Employees are only eligible for ESED if they worked every scheduled hour during the previous workweek. (sic) With the exception of any company paid time off and/or excused time granted by the company.

27. WK Kellogg Co. continued that policy.

28. Under the policy, "excused time granted by the company" includes unpaid time off.

29. FMLA intermitted leave was unpaid leave at Old Kellogg.

30. FMLA intermittent leave is unpaid leave at WK Kellogg Co.

31. However, each Defendant company reserved the right to charge up to one week of paid vacation against approved FMLA leave.

32. Under the ESED policy, in a week Shepherd took intermittent FMLA leave, Old Kellogg declared him ineligible for ESED for the related upcoming weekend.

33. When he requested ESED hours in a week in which he took intermittent FMLA leave, Old Kellogg denied his request because he had taken that leave, and workers within his job classification with less seniority were awarded ESED hours instead of Shepherd.

34. Other workers who had taken non-FMLA unpaid leave and/or paid leave, were not declared ineligible for ESED and were awarded ESED hours by Old Kellogg if their seniority entitled them to ESED.

35. WK Kellog Co. continued the policies and practices in place at Old Kellogg, and continued to deny Shepherd ESED hours when he took intermittent FMLA leave while awarding ESED hours to other workers who had taken other forms of unpaid leave and/or paid leave.

36. Defendants' policies were punitive.

37. When not enough employees voluntarily signed up for ESED to meet the Defendants' respective needs, Defendants would force Shepherd to work ESED hours, even if had not requested them, including following weeks in which Shepherd had taken FMLA and otherwise would be declared ineligible for ESED by the Defendants had he voluntarily requested ESED hours.

38. Shepherd objected to Old Kellogg's policies verbally and in text messages to its human resource employees and other managers.

39. Old Kellogg's human resource employees expressly confirmed that the reason Shepherd was being denied ESED hours was because he had taken FMLA.

40. In response, Shepherd expressly communicated that the policies violated the FMLA, and provided text from the FMLA to human resources personnel demonstrating why he believed Defendants were in violation.

41. At least one human resource employee suggested Shepherd contact a manager, Mike Stanfeld. Shepherd attempted to contact Stanfeld to discuss the FMLA and Defendants' policies, but Stanfeld never returned communications by Shepherd.

42. Old Kellog's policies were enforced in violation of the FMLA at least two years after the U.S. Court of Appeals for the Sixth Circuit decided *Dyer v. Ventra Sandusky, LLC*, 934 F.3d 472 (2019).

43. Old Kellogg knew, or with reasonable investigation following Shepherd's opposition should have known, that its ESED policy violated the FMLA.

44. On information and belief, some or all of the human resource personnel and managers employed by Old Kellogg, with whom Shepherd expressed his opposition, are currently employed in similar roles by WK Kellogg Co.

45. WK Kellogg knew, or with reasonable investigation based upon Shepherd's opposition should have known, that its ESED policy violated the FMLA.

## COUNT I – FMLA INTERFERENCE
29 U.S.C. 2615(a)(1)

46. Plaintiff incorporates by reference each of the preceding allegations in this Complaint.

47. Shepherd exercised his rights under the FMLA by requesting and taking intermittent FMLA leave.

48. Shepherd exercised his rights under the FMLA by opposing Defendants' ESED policies that denied him ESED hours when he took FMLA leave.

49. Defendants each denied Shepherd ESED hours because he took intermittent leave and/or he opposed Defendants' policies.

50. Defendants' conduct constitutes unlawful interference with and/or restraint of Sheperd's exercise of his rights under the FMLA in violation of 29 U.S.C. §2615(a)(1).

51. Shepherd has suffered damages as a result of Defendants' interference, including past and future lost wages and benefits. Shepherd is also entitled to liquidated damages, interest, attorneys' fees and costs, and other damages as recoverable by law.

52. Shepherd seeks all damages permitted by law.

### COUNT II – FMLA RETALIATOIN
29 U.S.C. 2615(a)(2)

53. Shepherd incorporates by reference each of the preceding allegations in this Complaint.

54. Shepherd exercised his rights under the FMLA by requesting and taking intermittent FMLA leave.

55. Shepherd exercised his rights under the FMLA by opposing Defendants' ESED policies that denied him ESED hours when he took FMLA leave.

56. Defendants denied Shepherd ESED hours because he took intermittent leave and/or he opposed Defendants' policies.

57. Defendants' conduct constitutes unlawful discrimination and/or retaliation against Sheperd in violation of his rights under the FMLA. 29 U.S.C. §2615(a)(2).

58. Shepherd has suffered damages as a result of Defendants' retaliation, including past and future lost wages and benefits. Shepherd is also entitled to

liquidated damages, interest, attorneys' fees and costs, and other damages as recoverable by law.

59. Shepherd seeks all damages permitted by law.

## RELIEF REQUESTED

PLAINTIFF REQUESTS that this court enter judgment against Defendants, jointly and severally to the extent permitted by law, and provide relief as follows:

1. **Equitable relief**

    a. Preliminary and permanent injunctive relief proscribing Defendants' unlawful employment practices which interfere with and/or retaliate against employees who take FMLA leave, and

    b. such further preliminary and final injunctive relief as deemed warranted by the Court.

2. **Legal relief**

    a. compensatory damages for lost wages and benefits in whatever amount Plaintiff is found to be entitled, together with interest thereon pursuant to 29 U.S.C. §2617(a)(1)(A)(ii).

    b. liquidated damages pursuant to 29 U.S.C. §2617(a)(1)(A)(iii) (including interest as provided therein).

    c. punitive and exemplary damages to the extent permitted by law.

    d. an award of pre- and post-judgment interest, costs, expenses (including reasonable expert witness fees), and reasonable attorney fees.

    e. such alternative relief as the Court determines Plaintiff to be entitled to.

## JURY REQUEST

Plaintiff requests trial by jury.

Dated: July 22, 2024        Respectfully submitted,

/s/ Jeffrey L. Herron\_\_\_\_

Jeffrey L. Herron  
Attorney for Plaintiff  
9689 Delmar St.  
Detroit, MI 48211  
(734) 277-0913  
herronlawgroup@gmail.com